UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| CANDACE BISHOP, PERSONAL REPRESENTATIVE FOR THE ESTATE OF CHARLES EDWARD BISHOP, JR.; AND CHARLES EDWARD BISHOP JR., ESTATE PLAINTIFF; | 3:20-CV-03002-RAL |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Charles Edward Bishop, Jr. tragically died in March of 2017, days after suffering a traumatic head injury. Around 11:00 p.m., on March 3, 2017, Charles was passed out in the middle of the road and concerned bystanders called for emergency assistance. A police officer was dispatched to the scene and subsequently escorted Charles to his home, where he could safely sleep off his intoxicated state. Charles had no apparent physical injuries and was able to communicate with the officer. Charles's wife, Plaintiff Candace Bishop arrived home shortly after Charles was dropped off, and after some effort to get Charles inside, she decided to let her husband sleep on the porch so he could get up and come inside when he was ready. The next morning, Candace grew concerned that Charles had not yet awakened, so she called an ambulance. Charles was transported to the hospital, where he later died. Tragically, neither the police officer nor Charles's family observed anything overly concerning about Charles's condition that night to indicate he

1

might need immediate medical attention. It is unclear how, where, or when Charles sustained his head injury, but there has been no evidence produced in this case to suggest that Charles's death was the result of anything more than an accident.

Candace, as the personal representative of her husband's estate, sued the Government of the United States alleging that the police officer who escorted Charles home that night unlawfully exercised jurisdiction over him and negligently caused his death. Doc. 1 at ¶ 10. The Government moved for summary judgment, Doc. 22, which this Court now grants.

## I.    Facts

Consistent with Local Rule 56.1, the Government filed a statement of undisputed material facts and corresponding documentary evidence with its summary judgment motion. See D.S.D. Civ. LR 56.1.A, C; Docs. 22–27. In a previous order by this Court, Plaintiff was instructed that the Local Rules apply equally to represented parties and pro se litigants such as herself. Doc. 30. Plaintiff was further informed that she should contact the Clerk of Court if she needed to receive the Local Rules or obtain additional copies of the summary judgment papers. Doc. 30. In another order, this Court specifically instructed Plaintiff on how she was required to respond to the Government's summary judgment motion:

> Local Rule 56.1.B pertaining to motions for summary judgment requires a party opposing a summary judgment motion to respond to the movant's statement of material facts with separately numbered responses and appropriate citations to the record and to identify any material facts where there is a genuine issue to be tried.

Doc. 32 at 1 (citing D.S.D. Civ. LR 56.1.B). Plaintiff, however, did not file an opposing statement of material facts as required by Rule 56.1.B.

Rule 56.1 further provides that "[a]ll material facts set forth in the movant's statement of material facts will be *deemed to be admitted* unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1.D (emphasis added). This

2

Court understands the difficulties pro se litigants face, and although it was not required to do so, this Court instructed Plaintiff how to respond to the Government's motion. See Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001) (holding that a District Court is not required to advise pro se litigants how to properly respond to motions for summary judgment). As this Court has routinely held, "[a] plaintiff proceeding pro se, of course, still has an obligation to follow the Federal Rules of Civil Procedure and this Court's Local Rules." Alphin v. Goosmann L. Firm, No. 4:18-CV-04070-RAL, 2019 WL 5191734, at *2 (D.S.D. Oct. 15, 2019) (citing Ackra Direct Mkgt. Corp. v. Fingerhut Corp., 86 F.3d 852, 856 (8th Cir. 1996)). This Court will liberally construe Plaintiff's letter dated December 6, 2022, which was Plaintiff's sole response to the summary judgment motion but will otherwise assume the Government's statement of material facts is undisputed and deemed admitted. See generally Erickson v. Pardus, 551 U.S. 89, 94 (2007) (noting that documents filed by pro se litigants are to be liberally construed); Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993) ("Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim").

On March 3, 2017, at around 11:16 p.m., a caller contacted police dispatch in Fort Thompson, South Dakota, about a man who was lying in the middle of the road. Doc. 24 at ¶ 1. The caller and another individual had pulled their cars over and activated their hazard lights so no one would run the man over. Id. at ¶ 2. Minutes later, law enforcement Officer Derek Parish arrived on the scene. Id. at ¶ 3. Parish was employed by the Bureau of Indian Affairs, Crow Creek Agency, which has responsibility for law enforcement in Fort Thompson.[1] Id. at ¶¶ 3–4; Doc. 25-3 at 2.

---

[1] Fort Thompson, South Dakota, is situated within the Crow Creek Indian Reservation.

Officer Parish identified the man on the ground as Charles Bishop, whom he knew from previous interactions. Doc. 24 at ¶ 5. Parish asked Charles whether he was alright, and Charles indicated that he was, Doc. 25-3 at 6, although according to Parish, Charles was intoxicated and having a hard time getting to his feet, Doc. 24 at ¶¶ 7–8. Charles asked Parish to help him up, and Parish did so. Id. at ¶¶ 6, 9. Once he was on his feet, Parish assisted Charles into the back of the police vehicle and told him he would give him a ride to his residence. Doc. 26-1. Parish did not notice any blood on Charles, and Charles did not complain that he was experiencing any pain. Doc. 24 at ¶¶ 10–11.

Roughly ten minutes after arriving on the scene, Officer Parish left with Charles to take him to his home, which was located about one-half mile from where Charles was found in the road. Id. at ¶¶ 14–15. When they arrived at the residence, Parish left Charles in the car, walked to the front door, and attempted to make contact with Charles's wife, Candace Bishop, whom Charles had told Parish should be home at the time. Id. at ¶¶ 12–16. No one answered the door, so Parish returned to his police vehicle and escorted Charles to the front porch of the residence. Id. at ¶¶ 17–18. Charles sat upright on the porch, assured Parish that he would be okay, and thanked Parish multiple times for his help. Id. at ¶¶ 19–23. Charles assured Parish that his wife was in the house. Id. at ¶ 21. Parish then returned to his patrol duties and left Charles seated on the front porch of the residence. Id. at ¶ 28. Nothing about the weather that night gave Parish cause for concern about Charles's safety—the temperature outside was comfortable and Charles was wearing multiple layers of clothing. Id. at ¶¶ 24–26.

Candace, who it turns out was not actually home when Officer Parish dropped Charles off, returned to the residence around 1:00 a.m., perhaps a little more than an hour after Parish had left Charles on his porch. Id. at ¶ 29. When Candace got home, she noticed her husband laying outside

4

on the front porch. Id. at ¶ 30. After unsuccessfully trying to wake up Charles and bring him inside with the help of her niece, Candace left the residence to go pick up her children from her sister's place. Id. at ¶¶ 31–33. Candace attributed Charles's passed out state to his drinking and let him sleep. Doc. 25-4 at 3–6. When she returned, Candace went inside to sleep and assumed Charles would eventually get up and come inside on his own. Doc. 24 at ¶¶ 34–35. Candace, by her own admission, did not notice any blood on Charles that night. Doc. 25-4 at 13.

Candace woke up several hours later, got her kids ready, and left to take them to the bus stop. Doc. 24 at ¶¶ 36–37. She noticed that Charles was still outside asleep, but that he had somehow moved from the porch to the ground, which was a distance of about seven to ten inches. Id. at ¶ 39; Doc. 25-4 at 8–9. When Candace returned, Charles was still laying on the ground. Doc. 24 at ¶ 40. Around 9:48 a.m., believing that her husband may have alcohol poisoning, Candace called for an ambulance. Id. at ¶ 41. Candace did not notice any trauma to Charles's body the night before or that morning. Id. at ¶ 45. When the ambulance arrived, Candace for the first time noticed blood coming from her husband's nose. Id. at ¶ 43. Charles was transported to the hospital, where he later passed away on March 6, 2017. Id. at ¶¶ 47–48.

An autopsy performed on Charles Bishop after his death found a blunt force injury to his head, acute alcohol intoxication, atherosclerotic cardiovascular disease, and hypertensive heart disease. Id. at ¶ 49. The autopsy results list Charles's cause of death as a traumatic brain injury due to blunt force injury of the head and found that his injury was consistent with a fall. Id. at ¶¶ 50–51; Doc. 27-1 at 1–2.

In her letter to this Court, Plaintiff expresses her understandable devastation over the death of her husband Charles. Doc. 33. Plaintiff suspects there was foul play in her husband's death, but she has not produced any evidence to support those assertions. Doc. 33.

## II.     Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) places the burden on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must establish that a material fact is genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in her pleading but "must set forth specific facts showing that there is a genuine issue for trial." Gacek, 666 F.3d at 1145–46 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)); see also Moslev v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

## III.    Discussion

Plaintiff sued the Government under the Federal Tort Claims Act (FTCA) alleging that Officer Parish negligently caused the death of Charles Bishop. Doc. 1. Under the FTCA, the United States is "liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976).

6

The FTCA waives sovereign immunity for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The Government does not contest that Parish was a federal employee and acting within the scope of his employment. Where, as here, the events underlying the FTCA claim occurs on Indian land, the "law of the place" is considered to be the state within which the land is located—in this case, South Dakota. LaFramboise v. Leavitt, 439 F.3d 792, 796 (8th Cir. 2006); see also Molzof v. United States, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law"). The appropriate analogue for Plaintiff's FTCA claim is a "South Dakota state law . . . negligence claim, which requires proof of duty, breach of that duty, proximate and factual causation, and actual injury." Sorace v. United States, 788 F.3d 758, 763 (8th Cir. 2015) (citing Hewitt v. Felderman, 841 N.W.2d 258, 263 (S.D. 2013)).

The Government appears to concede for the sake of argument that state law may have imposed a duty on Parish to exercise reasonable care as soon as he began to assist Charles. Doc. 23 at 7–8 (citing State Auto Ins. Cos. v. B.N.C., 702 N.W.2d 379, 387–89 (S.D. 2005)). Even so, "[t]he existence, scope, and range of a duty . . . depend upon the foreseeability of the risk of harm." Zerfas v. AMCO Ins. Co., 873 N.W.2d 65, 70 (S.D. 2015). In other words, "[n]o one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." Wildeboer v. S.D. Junior Chamber of Com., Inc., 561 N.W.2d 666, 670 (S.D. 1997) (quoting Poelstra v. Basin Elec. Power Co-op., 545 N.W.2d 823, 826–27 (S.D. 1996)).

Under South Dakota law, in a negligence action, "summary judgment is proper if no duty exists as a matter of law." Zerfas, 873 N.W.2d at 69. Even viewing the facts in a light most favorable to Candace as the nonmoving party, this Court concludes that the Government is entitled to summary judgment on the negligence claims. There is no evidence in the record to suggest that Parish or any reasonable person could have foreseen Charles might need medical attention when he was found passed out in the roadway. After all, those who found him called the police rather than for an ambulance. Indeed, like Parish, Charles's family when they initially found him after Parish left him on the porch did not suspect anything might be wrong with Charles beyond his apparent intoxication. In his interactions with Officer Parish, Charles was inebriated, but he was alert and able to communicate that he would be alright if Parish left him at home to be with his wife. South Dakota law did not impose a duty on Officer Parish to protect Charles from harm that even Charles's family did not foresee until they finally called an ambulance hours later suspecting alcohol poisoning.

As to the allegations of foul play against Officer Parish, there is simply no evidence in the record to suggest that Charles's injury was the result of anything other than an accident. "It is well settled that when challenging a summary judgment, the nonmoving party must substantiate their allegations with sufficient probative evidence that would permit a finding in their favor on more than mere speculation, conjecture, or fantasy." Hanson v. Big Stone Therapies, Inc., 916 N.W.2d 151, 159 (S.D. 2018) (cleaned up and citations omitted). There are no genuine issues of material fact on the unsubstantiated excessive force claims and as such the Government is entitled to judgment as a matter of law.

8

IV.     Conclusion

For the reasons stated above, it is

ORDERED that the Defendant's Motion for Summary Judgment, Doc. 22, is granted.

DATED this _5ᵗʰ_ day of January, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE